IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| SPECIALTY BEVERAGES, L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-04-1605-L |
| | ) | |
| PABST BREWING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## O R D E R

Plaintiff Specialty Beverages, L.L.C. (plaintiff or "Specialty")  brings this

action against defendant Pabst Brewing Company (defendant or "Pabst") alleging

breach of contract and misrepresentation in connection with an April 2004

agreement which provided that Pabst would license Specialty to be a non-

exclusive Nonresident Seller of strong beer in the state of Oklahoma.  Pabst has

raised certain defenses to the breach of contract claim and denies the allegations

of misrepresentation.  This matter is before the court on **(1)** Defendant's Motion

for Protective Order (Inadvertent Disclosure) **[Doc. No. 79]** and **(2)** Defendant's

Motion to Quash Subpoena and for Protective Order **[Doc. No. 87]**.  Trial in this

matter was recently continued to the court's March 2006 jury trial docket.

At the time the first of these motions was filed, Pabst asserted that it did not

know definitively how Specialty came into possession of the documents at issue.

Pabst argues that it has not waived the attorney-client privilege as to these

documents and that Specialty should be prohibited from using any privileged

document that was "inadvertently and erroneously produced during discovery, or

that plaintiff may have received from sources other than Pabst."  Subsequent

briefing on this motion indicates that most of the documents at issue are e-mails

that were intentionally sent to Specialty in April of 2004, before this lawsuit was

filed.  The e-mails were sent to Specialty by Chuck Lefholz, Pabst's state

manager for the state of Oklahoma, who has since retired from Pabst.  Mr.

Lefholz was the Pabst employee who dealt directly with Specialty during the

negotiation process related to the agreement that is the subject matter of this

litigation.  Generally speaking, the e-mails reflect internal discussions among

Pabst employees, including Pabst in-house counsel Yeoryios Appallas, regarding

the termination of the previous distributor of Pabst products and the appointment

of Specialty as Pabst's new distributor of strong beers in the state of Oklahoma.

As pointed out by Specialty, the Pabst e-mails do not contain notices of

confidentiality or any warnings indicating their privileged nature.  From the

materials submitted to the court, it appears quite certain that the e-mails came to

Specialty from Mr. Lefholz and that he intended to provide the e-mails to

Specialty.

Under this factual scenario, Pabst still maintains that the documents are

2

entitled to protection based on Pabst's contention that Mr. Lefholz was not authorized to waive Pabst's attorney-client privilege or work product protection and that Pabst was not aware that Lefholz had supplied the privileged documents to Specialty.  Pabst asserts that it first learned that Specialty had the privileged e-mails at a May 12, 2005 mediation.  However, it is undisputed that Specialty had actually included the e-mails obtained from Lefholz in its document production made to Pabst several weeks prior to the mediation.  Pabst did not meaningfully review the document production, however, and failed to discover that the documents over which it later asserted a privilege were included in Specialty's earlier document production.

For purposes of ruling on this motion, the court finds it appropriate to assume that the e-mails are subject to the attorney-client privilege.  The court must next decide whether the privilege was waived when Mr. Lefholz voluntarily and deliberately provided the e-mails to Specialty.  The court finds that the privilege was waived.

In making this determination, the court notes that there is apparently no controlling authority on the precise issues before the court.  The court has reviewed the authorities submitted by the parties and agrees with Specialty that the decision in Jonathan Corporation v. Prime Computer, Inc., 114 F.R.D. 693 (E.D. Va. 1987) is particularly instructive in this matter.  In Jonathan, the dispute centered on a memorandum prepared by one of Prime Computer, Inc.'s

("Prime's") in-house attorneys.  Id. at 694.  The memorandum contained counsel's legal interpretation of a disputed agreement between Jonathan Corporation ("Jonathan") and Prime.  Id.  The memorandum was not marked as "confidential" or as containing "attorney-client privileged" information and was distributed to several individuals including Prime's marketing representative, Mr. Hauger, who was responsible for the relevant portion of Jonathan's account with Prime.  Id. at 694-95.  This marketing representative was Prime's sole representative to deal with Jonathan on this matter.  During the course of negotiations and in an attempt to "clarify and fortify" Prime's position, the marketing representative voluntarily and on his own initiative provided a copy of the memorandum to Jonathan's sales manager.  Id. at 695.  No litigation over the matter was ongoing or contemplated between the parties at this time and the dispute over whether the memorandum was protected by the attorney-client privilege did not arise until the time of a later deposition.  Id.

Noting that the proponent of the attorney-client privilege bears the burden of demonstrating its applicability, the court concluded that Prime failed to meet its burden of demonstrating that the corporate attorney-client privilege had not been waived.  Id. at 700.  The court stated:

> It is this court's opinion that the voluntary production of the memorandum by Prime's marketing representative to Jonathan during the ordinary course of business negotiations stemming from a contract dispute waived any attorney-client privilege with respect to that document.  It was incumbent upon Prime to take the necessary precautions to preserve confidentiality.

4

[Citation omitted.] Prime cannot now disclaim the voluntary disclosure of the document to Jonathan by the very individual Prime had designated to deal with Jonathan on the matter and who was specifically copied on the document not marked in any way as confidential or privileged.  Prime both intentionally put the individual in a position to make the disclosure as well as gave him the information to disclose.  As such, any privilege attaching to the document has been waived by Prime through its agent, Mr. Hauger, in the scope of his employment. [Footnote omitted.]

Id.

        As pointed out by Specialty, the factual similarities between <u>Jonathan</u> and this case are many.  In applying the reasoning in <u>Jonathan</u> to the facts of this case, the court likewise concludes that the voluntary production of the e-mails by Mr. Lefholz to Specialty during the course of negotiations with respect to the licensing agreement waived any attorney-client privilege with respect to the e-mails.  The apparent lack of any precautions taken by Pabst to maintain confidentiality of the e-mails, combined with Pabst's failure to timely discover Specialty's possession of the documents weigh in favor of finding a waiver of the privilege.  There is no question that Mr. Lefholz was authorized to deal directly with Specialty during the negotiation process and that Pabst's e-mails were accessible to him.  There is no evidence that adequate steps were taken to ensure the confidentiality of the e-mails.  Once Mr. Lefholz voluntarily provided the e-mails to Specialty, the court finds it reasonable to conclude that Mr. Lefholz's voluntary act operated as a waiver of the privilege.

        Upon consideration, the court also rejects Pabst's argument that the e-

mails are subject to the work product privilege.  The party asserting the work

product privilege has the burden of showing the applicability of the doctrine.

Grand Jury Proceedings v. United States, 156 F.3d 1038, 1042 (10th Cir. 1998).

The documents must be prepared for the client in anticipation of litigation.  Id.  As

indicated, this litigation was not pending at the time of the writing or disclosure of

the e-mails. Mr. Appallas was not the author of all of the e-mails forwarded to

Specialty by Mr. Lefholz.  Pabst has made only general assertions of work

product privilege with respect to the e-mails at issue and the court finds that

Pabst has failed to demonstrate that the e-mails were meant to be confidential or

constituted the conclusions, legal opinions or legal theories of Mr. Appallas as

opposed to communications prepared in the regular course of business.  It is

clear from the record that Mr. Appallas wears many different hats at Pabst and

his position as in-house counsel is only one segment of his broader role in the

corporation.  As noted, none of the e-mails forwarded by Mr. Lefholz, including

those authored by Mr. Appallas, indicated they were confidential or protected by

the attorney-client or work product privilege.  The court agrees with Specialty that

Mr. Appallas asserted the attorney-client privilege in response to some questions

at his deposition but did not clearly assert a personal work product privilege with

respect to the e-mails that were disclosed to Specialty by Mr. Lefholz.  Under all

the circumstances, the court finds that the attorney work product privilege does

not require the court to issue a protective order with regard to the e-mails

provided to Specialty by Mr. Lefholz.

As for the seven other e-mails at issue, which are listed on Pabst's privilege log but not disclosed to Specialty, the court has little information.  The court rejects Pabst's contention that Specialty has improperly filed a cross-motion as to these documents since it is Pabst's duty to produce responsive non-privileged documents in discovery.  Issues regarding Pabst's assertion of various privileges have been properly raised and the court finds it appropriate to address the applicability of the asserted privileges in the context of Pabst's motion.  In reviewing the submissions of the parties on this issue, the court is generally concerned regarding Pabst statement that it "properly attempted to distinguish those documents going to and from Mr. Apallas as documents he deals with in his capacity as in-house counsel as opposed to documents he handles as Vice-President or Corporate Secretary."  While the court makes no prejudgment as to Pabst's designation of the particular documents at issue, the court finds that no party should not be permitted to use a privilege as both a sword and a shield through selective disclosures.  Therefore, the court determines that Pabst should be required to produce the seven e-mails to the court for *in camera* review so that the assertion of the privilege may be meaningfully evaluated and the documents disclosed to Specialty if appropriate.  Accordingly, the court will order Pabst to produce these documents to the court for *in camera* review.

Turning to Pabst's Motion to Quash Subpoena and for Protective Order,

the court finds that this motion should be granted.  The motion concerns a deposition subpoena served by Specialty on Pabst's lead litigation attorney in this case, Craig Hoster.  Pabst asserts that not only is Mr. Hoster Pabst's lead litigation attorney in this case, he was also Pabst's lead counsel in the <u>Marrs</u> case, a related case in Tulsa county with which the parties are familiar.  The motion states that the subpoena, which specifically seeks documents that related to "legal research" done for Pabst and documents that relate to "advice or opinion" given to Pabst are clearly covered by the attorney-client privilege and the attorney work product doctrine.  In addition, Pabst asserts that by serving the subpoena Specialty seeks to disqualify Pabst's lead trial attorney, resulting in significant additional expense and delay of the trial.

In its response, Specialty argues that Pabst is relying on certain events occurring in connection with prior litigation to form an affirmative defense to liability on Specialty's breach of contract claim.  According to Specialty, Pabst's reliance on the defenses of mutual mistake and legal impossibility require Pabst to show (1) not only that Pabst made a mistake, but that the mistake was not the result of a neglect of a legal duty on the part of Pabst, and (2) that the event which made its contract performance impossible or commercially impracticable was unforeseeable to Pabst.  Specialty states, "If Pabst is going to continue to press its <u>Marrs</u> litigation defense, Hoster must come forward to give a personal account of what he did or should have done to defend" in the <u>Marrs</u> case.

Specialty argues that what Mr. Hoster did or did not do in the <u>Marrs</u> litigation is central to this case.  Specialty denies that it wants Mr. Hoster disqualified, however.

The court has carefully considered this difficult issue.  The court believes that requiring the testimony of Mr. Hoster on the <u>Marrs</u> litigation issues would almost certainly require his disqualification and would result in significant delay and expense.  Even assuming the validity of Specialty's argument that the testimony of Mr. Hoster is required to establish Pabst's defenses, the court finds that this is not sufficient to require the deposition of Mr. Hoster under the circumstances.  It is Pabst's obligation to provide evidence in support of its defenses under the appropriate burden of proof.  Pabst, not Specialty, will be affected by the lack of Mr. Hoster's testimony regarding Pabst's defenses.  Of course, if Specialty is not allowed to take the deposition of Mr. Hoster, Pabst should be precluded from using or attempting to use the testimony of Mr. Hoster in any way in connection with its assertion of affirmative defenses to liability in this matter.  Accordingly, Defendant's Motion to Quash Subpoena and for Protective Order will be granted with the proviso that Pabst will be precluded from using testimony of Mr. Hoster in this matter.

In summary, Defendant's Motion for Protective Order (Inadvertent Disclosure) **[Doc. No. 79]** is **DENIED** with respect to the e-mails provided to Specialty by Mr. Lefholz.  As more fully discussed above, the remaining e-mails

listed on Pabst's privilege log which are to be produced to the court for *in camera* review shall be submitted by Pabst to the court's chambers within five (5) days of the date of this order.  Upon further review of these documents, the court will enter an order regarding any subsequent disclosure if appropriate.  Defendant's Motion to Quash Subpoena and for Protective Order **[Doc. No. 87]** is **GRANTED**, all as more fully set forth above.

It is so ordered this 19th day of January, 2006.

_____
TIM LEONARD
United States District Judge